# In re MONUMENTAL SHOE MFG. CO.

## Petition of DROVERS' & MECHANICS' NAT. BANK OF BALTIMORE.

(District Court, D. Maryland. May 24, 1926.)

1. Bankruptcy ⊜⟶178(1).

Assignment of accounts receivable by bankrupt to bank before insolvency, under which accounts were collected by bankrupt and proceeds deposited in bank, subject to withdrawal at will, held invalid.

2. Bankruptcy ⊜⟶178(1)—Assignment of accounts receivable by bankrupt to bank, under which proceeds of collections were deposited to credit of bank, which then gave its check for amount so received to bankrupt, held valid.

Assignment of accounts receivable by bankrupt to bank, under which accounts were collected by bankrupt, and proceeds deposited to credit of bank as assignee, which then gave its

check for amount so deposited to bankrupt, to be used in its business, *held* valid.

3. **Bankruptcy ⇐══178(1)—Where bankrupt deposited amounts collected on accounts receivable to bank's credit as assignee, and received bank's check for such amount, transaction held not payment on account of bankrupt's indebtedness secured by assignment.**

Where bankrupt assigned accounts receivable to bank as collateral security for notes and renewals, and thereafter accounts were collected by bankrupt and proceeds deposited to credit of bank, which then gave bankrupt its check for amount so received, *held*, that transaction was in effect a request for release of collateral by bank, and assent of bank to such release, and not a payment on account of bankrupt's indebtedness.

In Bankruptcy. In the matter of the Monumental Shoe Manufacturing Company, bankrupt. On petition by the Drovers' & Mechanics' National Bank of Baltimore to establish, as against trustee in bankruptcy, its title to certain accounts receivable of bankrupt, and proceeds of certain other accounts receivable in hands of trustee. Decree for petitioner.

Niles, Wolff, Barton & Morrow, of Baltimore, Md., for Drovers' & Mechanics' Nat. Bank, of Baltimore.

Louis Hollander and J. Purdon Wright, both of Baltimore, Md., for trustee.

SOPER, District Judge. The Drovers' & Mechanics' National Bank of Baltimore, by petition filed in this case, seeks to establish, as against the trustee in bankruptcy, its title to certain accounts receivable of the Monumental Shoe Manufacturing Company, the bankrupt, and to the proceeds of other accounts receivable of the bankrupt now in its hands, or in the hands of the trustee. The controversy turns on the validity of certain assignments of all its accounts receivable by the company to the bank, the last two of which were executed on December 3 and December 17, 1925, respectively.

[1] The rights of the parties depend upon the course of dealing between the bank and the company for a period of approximately seven months preceding the institution of the bankruptcy proceedings on December 19, 1925. The company was a depositor of the bank, and a borrower from it of certain money used to carry on the business. In May, 1925, the company was indebted to the bank in the sum of $14,000 on two notes—one for $4,000, dated May 13, and payable in 30 days, and the other for $10,000, dated May 22, and payable in 90 days. This indebtedness had been outstanding without reduction for 2 years. A financial statement of the condition of the company as of March 1, 1925, which had been furnished to the bank, showed that the assets of the company were $75,980.46, and the liabilities $41,541.87, a net excess of assets over liabilities of $33,438.59. While the figures indicated the solvency of the company, its progress had not been entirely satisfactory in the opinion of the bank, and the bank therefore informed the company that, unless additional capital was invested in the business, the bank would insist upon the payment of the loans or upon an assignment of the accounts receivable as security therefor. An effort was made to obtain additional capital without success, and consequently, in order to secure the payment of the two notes, an assignment of accounts, aggregating $12,373.41, was made on May 22, 1925. At that time each open account on the books was stamped with a statement to the effect that the account belonged to the bank, and a list of the accounts was made up, upon which was written an assignment from the company to the bank. This was the beginning of the arrangement. In accordance therewith, the credit man of the bank visited the company's place of business every 2 weeks thereafter, and inspected the ledger, whereupon a notice of assignment was stamped upon each new account created since the last inspection, and a new list of all the outstanding accounts receivable, containing words of assignment, was drawn up and delivered. The debtors were not notified of the assignments. The company was permitted to collect the accounts, and to deposit the proceeds to its credit in the bank, and to use them at will in the prosecution of the business.

[2] The control thus retained by the company over the accounts was so complete that the assignments were invalid for reasons more fully set out in the opinion of this court in Re Almond-Jones Co., Inc., Bankrupt, 13 F. (2d) 152, filed on May 20, 1926, wherein the cases of Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991, and Chapman v. Emerson (C. C. A.) 8 F.(2d) 353, were discussed. Such, indeed, seems to have been the opinion of the attorneys for the bank when they learned of the decision in Benedict v. Ratner, which was announced May 25, 1925. At any rate, on July 9, after the decision had come to their notice, a change was made upon their advice in the method of handling the proceeds of the accounts. The collections were still made by the company, but the customers' checks, as they came in, were indorsed by the company and deposited in the bank, to the credit of the bank, as assignee. Contemporaneously with each deposit, a

check for the sum total of the items included therein was drawn by the bank in favor of the company, and was deposited to the credit of the company, which continued to use the collections in its business until December 17, 1925, when the bank learned for the first time that the company was insolvent. Thereupon the bank notified the debtors of the assignment of the accounts and proceeded to collect and appropriate them.

It is not denied that the bank knew that the company was insolvent when the assignment of December 17 was made; but this is immaterial, since that assignment contained no accounts not also found in the assignment executed on December 3, when, as the court finds, the bank did not have reasonable grounds to believe that the business was insolvent. This finding is supported by the testimony of the officers of the bank, and by the admitted fact that the outstanding accounts, which amounted to $9,606.31 on December 3, had shrunk to the sum of $4,887.99 by December 17, and that in the interval the bank, having received from the company from day to day the moneys collected, returned them to the company for use in the business. There was no balance in bank to the company's credit on December 17.

The bank claims that the assignment of December 3 and its predecessors were given as collateral security for the payment of the notes issued in May, and for the subsequent renewals, which had been made at 90-day intervals; the $10,000 note being last renewed on November 18, and the $4,000 note on December 8. The dates of the assignments do not coincide with the maturities of the notes, but it is clear that the renewal of the notes was the consideration for the assignments; for under the plan of operation there was an implied, if not an express, contract between the parties that each note was renewed when it fell due upon condition that the assignment, then outstanding, was to be taken as collateral security for the payment of the note, and also that subsequent biweekly assignments should be made for the same purpose. There was the further consideration that the bank would release the collections when paid to it, so that the company might have the use of the money. The period during which the arrangement should continue was not fixed, but it was implicit in the situation that the notes were to be renewed and the collections were to be released only so long as the bank should be willing to go on. Nevertheless the assignments were made for a good consideration. Were they in other respects valid, or was there, as in Benedict v. Ratner, a reservation of dominion over the collateral by the borrower, so inconsistent with the effective disposition of title as to render the transaction void?

The collection of the accounts by the assignor and the payment of the proceeds to the assignee, does not invalidate an assignment, but it does become invalid if the assignor has the right to use the proceeds as he sees fit. Such, indeed, was the arrangement between the parties prior to July; but thereafter it was the duty and agreement of the company to pay the money to the bank. This was done, and until December 17 the money was returned. But the bank was under no continuing obligation. It might at any time, if it saw fit, retain the money and apply it to the payment of the notes. Such an occasion arose on December 17, and thereafter the bank immediately took over the accounts and began to collect them. There was a substantial difference between the first plan, by which all the proceeds were deposited in the company's account, subject to its unrestricted use, and the second, by which the proceeds were first taken to the bank and its consent in each instance secured before the company was allowed to use the funds. The distinction lies in the fact that before July the right to use the money was given by the bank coincidentally with the assignment, whereas in July, and subsequently, the right to use the money was withheld at the time the assignment was made, and was granted only, as to each account, after the proceeds had been collected and placed within the bank's control.

[3] To what indebtedness is the assignment applicable as collateral security? It might be said that there should be credited upon the notes the proceeds of all the accounts collected and paid to the bank since the notes were last renewed, on the theory that, when the bank drew its checks upon its account as assignee, it made in each case a new loan unsecured by any collateral; but the fact is that the proceeds of the accounts were not paid to the bank or accepted by it to be credited upon the notes. No credits were indorsed upon the notes, and no entry was made in the books of either party to indicate that new loans had been made. The indorsement and delivery of the customers' checks to the bank in exchange for the check of the bank was, in effect, a request in each instance for the release of the collateral by the bank and the assent of the bank to such release. It was not a payment on account of the company's indebtedness, which remained the same, and was still secured by the uncollected accounts.

The assignments executed from July 9 to

December 3 were valid, and the bank is entitled to the proceeds of the accounts, so that they may be applied to the payment of the outstanding notes.